## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **RAQUEL MARTINEZ** | § | |
| | § | |
| **Plaintiff** | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO.   5:23-cv-460** |
| | § | |
| | § | **Jury Demanded** |
| **BEXAR COUNTY, TEXAS** | § | |
| **BY AND THROUGH ITS AGENT** | § | |
| **THE BEXAR COUNTY DISTRICT** | § | |
| **ATTORNEY'S OFFICE** | § | |
| | § | |
| **Defendant** | § | |

### PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND

**TO THE HONORABLE JUDGE OF SAID COURT:**

NOW COMES **RAQUEL MARTINEZ**, hereafter referred to as "Ms. Martinez" or "Plaintiff," and files this, her Original Complaint and Jury Demand against Defendant Bexar County, Texas by and through its agent The Bexar County District Attorney's Office, ("Bexar County", or "Defendant"), Ms. Martinez alleges violations of Americans with Disabilities Act of 1990 (ADA) as Amended, the Texas Labor Code §210.001 et. seq., the Rehabilitation Act, and the Family and Medical Leave Act and the Texas Labor Code.   For causes of action, Ms. Martinez would show this Court as follows:

## I.
## PARTIES

1.    Plaintiff **RAQUEL MARTINEZ** is a resident of San Antonio, Bexar County, Texas.

2.    Defendant, **BEXAR COUNTY, TEXAS BY AND THROUGH ITS AGENT**

1

**THE BEXAR COUNTY DISTRICT ATTORNEY'S OFFICE**, is a political subdivision of the state of Texas.   Citation may be served upon Defendant by delivery of citation to: Bexar County Judge Nelson W. Wolff, 101 W. Nueva 10th Floor San Antonio, Texas 78205.   A waiver of service has been requested.

## II.
## JURISDICTION AND VENUE

3.      The Court has jurisdiction to hear the merits of Martinez's claims under 28 U.S.C. §1331 as they arise under federal statutes, specifically the Americans with Disabilities Act, the Rehabilitation Act, and the Family and Medical Leave Act.

4.      This Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. §1367.

5.      All the acts alleged herein occurred in Bexar County, Texas.

6.      Venue in this district and division is proper under 28 U.S.C. § 1391(b)(2).

7.      At the time of filing, damages are within the jurisdictional limits of the court.

## III.
## MISNOMER / MISIDENTIFICATION

8.      If any parties are misnamed or are not included herein, it is Plaintiff's contention that such was a "misidentification," "misnomer," and/or such parties are/were "alter "egos of parties named herein.   Alternatively, Plaintiff contends that such "corporate veils" should be pierced to hold such parties properly included in the interest of justice.

## IV.
## FACTS

9.      Plaintiff Raquel Martinez began working for Defendant Bexar County at the Bexar County District Attorney's Office in October 2006.

2

10.    Ms. Martinez has Fibromyalgia.   This is a long-term health condition that affects the major life activities of lifting, bending, cell growth, muscle function and immune system function.

11.    Ms. Martinez's minor son A.G. has Epilepsy, which affects the major life activity of neurological function, and Cerebral Palsy which affects the major life activities of taking care of one's self, communicating, thinking, performing manual tasks and being mobile.

12.    Due to the severity of his disabilities, A.G. requires frequent assistance either from Ms. Martinez or from a nurse.

13.    A.G. also had regular doctors' visits that Ms. Martinez had to take him to.   As a result, Ms. Martinez sought and obtained FMLA leave to attend these doctor visits and to assist her son.   She had received FMLA for this purpose starting in 2013 through 2020.

14.    Ms. Martinez would call and text her supervisor, Sara Alonzo when she was going to be absent.

15.    Ms. Martinez had informed her supervisor as well as Chief Jane Davis about her Fibromyalgia and related conditions as well as her son's cerebral palsy and epilepsy.

16.    On October 15, 2021, Ms. Martinez submitted documentation requesting leave under the Family and Medical Leave Act for her own health condition so that she could get hand surgery.   The condition needing the surgery was related to her Fibromyalgia and related bone and muscle degeneration.

17.    On October 18, 2021, Ms. Martinez submitted a "permission to contact health care provider" document to Bexar County Human Resources to allow them to get medical documentation related to her FMLA request.

18.    Chief Davis signed the leave request on October 20, 2021, and a note on it by "Sara A" indicates that she was forwarding the document.

19.    Ms. Martinez had several doctor visits in November 2021 due to her wrist, elbow, neck, back, and Fibromyalgia.   She discussed times that she was absent or arrived late due to her medical condition with Ms. Alonzo.   Ms. Martinez also provided Ms. Alonzo with medical information about her condition to explain why she was absent or arrived late.

20.    On November 15, 2021, Ms. Martinez submitted FMLA documentation requesting time off from January 13, 2022, to January 16, 2022, for oral surgery.   Ultimately this surgery was rescheduled.

21.    On November 17, 2021, Ms. Martinez was placed on a "Final Written Warning" based on attendance by her supervisor Sarah Alonzo.   Any attendance at issue would involve her medical conditions and/or FMLA leave.   Ms. Martinez had not received any discipline since 2018.

22.    In December 2021, Martinez met with Jane Davis and Sara Alonzo.   Davis told Martinez that she had been told that Martinez had several "no-call no-shows."   Martinez was surprised and told them she did not understand what was going on.   Martinez reminded Alonzo about the conversation they had had about her medical condition.

23.    Martinez told Davis that Alonzo was incorrect and that she had been compliant and had provided all her doctors' notes.

24.    On December 9, 2021, Martinez was notified by email to speak with the Chief Administrator Melissa Severston.   Martinez went to ask Davis what was going on and Davis informed her that Alonzo had claimed that Martinez had a no call no show.   According to Davis,

Alonzo was claiming that Martinez had scheduled Monday off but came in that day and was scheduled Tuesday but did not come in.

25.    Martinez told Davis that she was concerned about how difficult Alonzo was making it for her to schedule her doctor's appointments.   Martinez had been writing the days she would be out for doctor's appointments on the calendar, but Alonzo had told her to stop doing so.   Davis told Martinez that she was "overwhelming" Alonzo with the number of absences she was having and the medical paperwork she was submitting to support the absences.

26.    Martinez was out from December 13, 2021, to December 23, 2021, for the hand surgery.

27.    In February/March of 2022, Alonzo called Martinez into her office and asked her to prepare a detailed description of her Police Liaison work.

28.    On the morning of May 17, 2022, Ms. Martinez was informed that her son's nurse would not be available that day.   Ms. Martinez was scheduled to work and specifically was scheduled to answer the phone at the DA's office.

29.    Because there would be no one there to answer the phone, since Ms. Martinez was scheduled to be the person who would answer that day, she contacted her supervisor Sarah Alonzo by text to let her know about the absence.

30.    Ms. Martinez was terminated on May 20, 2022, for an alleged "no-call no-show" on May 17, 2022.   At that time, she still had 165.52 hours of vacation time and 4 hours of sick time.

## V.
## DISCRIMINATION UNDER THE REHABILITATION ACT

31.    To the extent Defendant receives any federal funds, Plaintiff asserts a claim under

the Rehabilitation Act for discrimination.

32.    Plaintiff hereby incorporates the preceding paragraphs for all purposes.

33.    Plaintiff is an individual with a disability, as defined by the REHABILITATION ACT, as amended, see 29 U.S.C. §705(20).

(1) Plaintiff was disabled (actually disabled and/or "regarded as" disabled) due to her fibromyalgia, which limited the major life activities of lifting, bending, cell growth and immune system function;   She also had a known association with her son who has the disability of epilepsy, which affects the major life activity of neurological function, and cerebral palsy which affects the major life activities of taking care of one's self, communicating, thinking, performing manual tasks and being mobile.

(2) Plaintiff was qualified for the position of Office Assistant II;

(3) Plaintiff suffered an adverse employment action in that she was terminated from her employment with Defendant; and

(4) The circumstances arising out of Plaintiff's termination raise an inference of disability discrimination.   Although Plaintiff had informed Defendant that she would be absent on May 24, 2022 because her son's nurse was not available and he needed assistance, Plaintiff was listed as a "no-call no-show" and was terminated.   Plaintiff had previously been told that her disability related absences for herself and her son were "overwhelming."

34.    Defendant violated the REHABILITATION ACT 29 U.S.C. §794(a), as amended, by discriminating against Plaintiff because of her disability and/or her association with a disabled individual under any program or activity receiving Federal financial assistance. In doing so, Defendant intentionally and with deliberate indifference to Plaintiff's federally protected rights.

35.    Defendant's discriminatory acts violate 42 U.S.C. §1211 *et. seq.*, as amended, which are incorporated into the REHABILITATION ACT under 29 U.S.C. §794(d).

## VI.
## DISABILITY DISCRIMINATION UNDER THE AMERICANS WITH DISABILITIES ACT, AS AMENDED

6

36.    The evidence will show that:

(1) Plaintiff was disabled (actually disabled and/or "regarded as" disabled) due to her fibromyalgia, which limited the major life activities of lifting, bending, cell growth and immune system function;   She also had a known association with her son who has the disability of epilepsy, which affects the major life activity of neurological function, and cerebral palsy which affects the major life activities of taking care of one's self, communicating, thinking, performing manual tasks and being mobile.

(2) Plaintiff was qualified for her position of Office Assistant II;

(3) Plaintiff suffered an adverse employment action in that she was terminated; and

(4) The circumstances arising out of Plaintiff's termination raise an inference of disability discrimination.  Although Plaintiff had informed Defendant that she would be absent on May 24, 2022 because her son's nurse was not available and he needed assistance, Plaintiff was listed as a "no-call no-show" and was terminated. Plaintiff had previously been told that her disability related absences for herself and her son were "overwhelming."

37.    The evidence will also show that Defendant's reason(s) for taking adverse

employment actions against Plaintiff's employment are pretextual.

## VII.
## DISABILITY DISCRIMINATION UNDER THE TEXAS LABOR CODE

38.    The evidence will show that:

(1) Plaintiff was disabled (actually disabled and/or "regarded as" disabled) due to her fibromyalgia, which limited the major life activities of lifting, bending, cell growth and immune system function;

(2) Plaintiff was qualified for her position of Office Assistant II;

(3) Plaintiff suffered an adverse employment action in that she was terminated; and

(4) The circumstances arising out of Plaintiff's termination raise an inference of disability discrimination.  Although Plaintiff had informed Defendant that she would be absent on May 24, 2022 because her son's nurse was not available and he needed assistance, Plaintiff was listed as a "no-call no-show" and was terminated. Plaintiff had previously been told that her disability related absences were "overwhelming."

**VIII.**
**RETALIATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT 42**
**U.S.C. §12203(a) 42 U.S.C. §2000e-3(a)**

39.    The evidence will demonstrate that prior to her termination:

(1) Plaintiff was disabled (actually disabled and/or "regarded as" disabled) due to her fibromyalgia, which limited the major life activities of lifting, bending, cell growth and immune system function;   She also had a known association with her son who has the disability of epilepsy, which affects the major life activity of neurological function.

(2) Plaintiff was subject to an adverse employment action when she was terminated by Defendant shortly after informing Defendant that she would not make it into work because her son's nurse was not available and he needed assistance.

(3) The protected activity caused the termination, although Plaintiff had informed Defendant that she would be absent on May 24, 2022 because her son's nurse was not available and he needed assistance, Plaintiff was listed as a "no-call no-show" and was terminated.   Plaintiff had previously been told that her disability related absences for herself and her son were "overwhelming."

**IX.**
**RETALIATION IN VIOLATION OF THE TEXAS LABOR CODE §21.055 ET. SEQ.**

40.    The evidence will demonstrate that prior to her termination:

(1) Plaintiff was disabled (actually disabled and/or "regarded as" disabled) due to her fibromyalgia, which limited the major life activities of lifting, bending, cell growth and immune system function;

(2) Plaintiff was subject to an adverse employment action when she was terminated by Defendant shortly after informing Defendant that she would not make it into work because her son's nurse was not available and he needed assistance.

(3) The protected activity caused the termination although Plaintiff had informed Defendant that she would be absent on May 24, 2022 because her son's nurse was not available and he needed assistance, Plaintiff was listed as a "no-call no-show" and was terminated.   Plaintiff had previously been told that her disability related absences were "overwhelming."

## X.
## RESPONDEAT SUPERIOR

41.    Employees involved in the discrimination described herein were at all times employees, agents, or representatives of the Defendant and were at all times acting in the course and scope of that employment.   Accordingly, Defendant is liable for such conduct under the doctrine of Respondeat Superior.

## XI.
## DAMAGES

42.    Plaintiff alleges that as a direct and proximate result of the conduct and/or omissions on the part of the Defendant, she is entitled to recover at least the following legal damages:

    (1) Lost wages, past and future;

    (2) Compensatory Damages, including harm to professional reputation inconvenience, and mental anguish suffered in the past, and which, in all reasonable probability, which will be suffered in the future. She further seeks damages based on any damage to her reputation because she was improperly terminated which resulted in damages to her business reputation;

    (3) Injunctive and/or equitable relief to which she would be entitled

    (4) Reasonable attorney fees, expert fees and costs.

## XII.
## ADMINISTRATIVE FILINGS

43.    Plaintiff filed her original verified complaint with the Equal Employment Opportunity Commission and the Texas Workforce Commission Civil Rights Division dually alleging that the Defendant had committed and unlawful employment action against Plaintiff.

44.    Thereafter, Plaintiff received a Right to Sue letter the EEOC on her charge, giving Plaintiff notice of her right to sue Defendant within 90 days of its receipt, attached hereto as **Exhibit "A."** Plaintiff timely filed her Plaintiff's Original Complaint.

## XIII.
## ATTORNEY FEES

45.    Defendants' conduct as described in this petition and the resulting damage and loss to Plaintiff has necessitated Plaintiff's retaining counsel.   Therefore, Plaintiff seeks all reasonable and necessary attorney fees in this case which would include at least the following:

(1) Preparation and trial of the claim, in an amount the jury deems reasonable;

(2) Post-trial, pre-appeal legal services, in an amount the jury deems reasonable;

(3) An appeal to the Court of Appeals, in an amount the jury deems reasonable;

(4) Making or responding to an Application for Writ of Error to the Supreme Court, and attorneys' fees if application for Writ of Error is granted, in an amount the jury deems reasonable; and

(5) Post-judgment discovery and collection in the event execution on the judgment is necessary, in an amount the jury deems reasonable.

## XIV.
## JURY DEMAND

46.    Plaintiff further demands a trial by jury.   A jury fee has been tendered.

## XV.
## PRAYER FOR RELIEF

WHEREFORE, **RAQUEL MARTINEZ** requests Defendant be cited to appear and answer, and that on final trial, Martinez have judgment against Defendant as follows:

(1) judgment against Defendant for Martinez's actual damages, including lost

wages and benefits (both front and back pay and/or equitable relief to include reinstatement, if feasible);

(2) judgment against Defendant for compensatory damages in the maximum amount allowed by law;

(3) equitable and/or injunctive relief to which she would be entitled;

(4) pre-judgment and post-judgment interest at the maximum allowed by law;

(5) costs of suit, including attorneys' fees; and

(6) such other and further relief, both at law and in equity, to which Martinez may be justly entitled.

**Respectfully Submitted,**

**PONCIO LAW OFFICES**
**A Professional Corporation**
**5410 Fredericksburg Road, Suite 109**
**San Antonio, Texas 78229-3550**
**Telephone: (210) 212-7979**
**Facsimile: (210) 212-5880**


**BY:  _/s/   ADAM PONCIO_**

**ADAM PONCIO**
**STATE BAR NO. 16109800**
**aponcio@ponciolaw.com**
**ALAN BRAUN**
**STATE BAR NO. 24054488**
**abraun@ponciolaw.com**

**ATTORNEYS FOR PLAINTIFF**

11

# EXHIBIT A