**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| RAQUEL MARTINEZ, <br> *Plaintiff* <br><br> v. <br><br> BEXAR COUNTY, TEXAS BY AND THROUGH ITS AGENT THE BEXAR COUNTY DISTRICT ATTORNEYS OFFICE, <br> *Defendant* | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § | Case No.  SA-23-CA-00460-XR |

<u>**ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**</u>

On this date, the Court considered Defendant's Motion for Summary Judgment (ECF No. 24), Plaintiff's response (ECF No. 28), and Defendant's reply (ECF No. 29). After careful consideration, Defendant's motion (ECF No. 24) is **DENIED**.

**BACKGROUND**

This is an employment dispute. Plaintiff brought this action for damages alleging that Defendant terminated her because she and her son are disabled. Defendant claims it lawfully terminated Plaintiff because she violated its attendance policy.

**I. Plaintiff's Employment and Health Challenges**

Plaintiff began her employment with Defendant in 2005 as a full-time Word-Processing Specialist. ECF Nos. 24 at 2, 28 at 3. She was assigned to the Juvenile Division for 17 years. *Id.* During this time, she experienced both family and personal health challenges.

In 2012, she gave birth to a son with cerebral palsy, epilepsy, chronic lung disease, and multiple other conditions. ECF No. 29 at 4. This son is dependent on caregivers, wheelchair-bound, and requires treatment from specialists. *Id.* at 5. Starting in 2013, Plaintiff applied for and received leave to care for her son under the Family and Medical Leave Act ("FMLA"). *Id.*; ECF No. 24 at

1

4. She received FMLA leave regularly through at least 2020. *Compare* ECF No. 24 at 4 (claiming that the benefits expired on September 6, 2020), *with* ECF No. 28 at 5 (claiming that Plaintiff received FMLA leave on October 15, 2021).

Plaintiff also had personal health problems. Beginning in 2010, she developed chronic neck and back pain caused by a degenerative spinal disease. ECF No. 24 at 6–7. In 2019, she was diagnosed with fibromyalgia, a condition causing pain, fatigue, sleep disturbances, and cognitive difficulties. *Id*. at 6. She also developed TMJ disorder in 2020 and bilateral carpal tunnel syndrome in 2021. *Id*. at 6–7. She claims to have informed Defendant of these conditions and their impacts on her work. *Id*. Plaintiff also claims to have applied for and received FMLA leave on account of these disabilities. *Id*. at 7.

## II. Tardiness, Absenteeism, and Related Discipline

Defendant claims that Plaintiff had issues with absenteeism and tardiness throughout her employment. *See* ECF No. 28 at 2–4. Defendant's attendance policy required employees to work from 8:00 a.m. to 5:00 p.m. ECF No. 24 at 3. It defined tardiness as "[a]n unscheduled or unapproved arrival more than (8) minutes" after scheduled arrival. *Id.* Under the policy, "[a]ny week with more than (1) late arrival may warrant progressive disciplinary action up to and including termination of employment." *Id*.

The Juvenile Division had an additional policy that required employees to call before 8:30 a.m. if they expected to be late or absent. ECF No. 24-2 at 3. Failure to do so constituted a "no call, no show." ECF No. 24 at 3. This additional policy did not state the consequences of a "no call, no show." *See id*.

In November 2021, Plaintiff was given a "final written warning" for absenteeism and tardiness during a meeting with two supervisors, Alonzo and Davis. ECF Nos. 24 at 5, 28 at 8. During this meeting, the supervisors instructed Plaintiff to call (not text or email) when late or

absent. ECF No. 24 at 5. Plaintiff did not sign the warning because she disagreed with it and was not told the specific dates of the alleged absences. ECF No. 28 at 8. The warning noted that Plaintiff's last written discipline was in April 2018. *Id*.

In December 2021, Plaintiff met with Davis. She told Davis that Alonzo had been making it difficult for Plaintiff to schedule doctor appointments and had told Plaintiff to stop writing appointments on the calendar. ECF No. 28 at 9. Allegedly, Davis responded that Plaintiff was "overwhelming" her coworkers. *Id.* Plaintiff said, "It's my doctor's appointment." *Id*. Davis replied, "I understand but it's too much." *Id*.

### III. May 17 Absence and Termination

Defendant ultimately terminated Plaintiff because of an alleged "no call, no show" on May 17, 2022. ECF No. 25-8 at 2. At 7:55 a.m. that morning, Plaintiff texted Alonzo that she could not come to work because she just learned that her son's nurse could not provide care that day. ECF No. 28 at 10. Plaintiff had to care for her son instead. *Id*. But Alonzo was on bereavement leave and did not see Plaintiff's text until days later. ECF No. 24-4 at 8.

After Alonzo did not respond, Plaintiff claims to have called the office at 8:00 a.m. *Id.* No one answered. *Id*. Plaintiff then texted co-worker Michael Gonzales, who acknowledged receipt. *Id*.

On May 20, 2022, Defendant terminated Plaintiff's employment. ECF No. 24 at 6. Defendant provided a termination memorandum ("the termination letter") stating that the reason for termination was Plaintiff's "failure to follow calling-in instructions and no call, no show on May 17, 2022." ECF No. 24-8 at 2. The letter referenced the "final written warning." *Id*.

### IV. Procedural History

Plaintiff believes this reason pretextual and that she was discharged because she and her son are disabled. Accordingly, she submitted a charge to the Equal Employment Opportunity

3

Commission in June 2022. ECF No. 24 at 1. She received a "right to sue" letter and filed this suit in April 2023. She alleges six causes of action:

(1) disability discrimination under the Americans with Disabilities Act ("ADA") based on theories of (a) direct and (b) associational discrimination, 42 U.S.C. § 12112(a);

(2) disability discrimination under the Rehabilitation Act, 29 U.S.C. § 794(a);

(3) disability discrimination under the Texas Labor Code § 21.051;

(4) retaliation under the ADA, 42 U.S.C. §§ 12203, 2000e-3(a);

(5) retaliation under the Texas Labor Code § 21.055; and

(6) retaliation under the FMLA, 29 U.S.C. § 2619(a).

*See* ECF No. 1 at 5–10 (asserting claims). Defendant now moves for summary judgment against all claims.

**LEGAL STANDARD**

The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56. To establish that there is no genuine issue as to any material fact, the movant must either submit evidence that negates the existence of some material element of the non-moving party's claim or defense, or, if the crucial issue is one for which the nonmoving party will bear the burden of proof at trial, merely point out that the evidence in the record is insufficient to support an essential element of the nonmovant's claim or defense. *Little v. Liquid Air Corp.*, 952 F.2d 841, 847 (5th Cir. 1992), *on reh'g en* banc, 37 F.3d 1069 (5th Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

4

Once the movant carries its initial burden, the burden shifts to the nonmovant to show that summary judgment is inappropriate. *See Fields v. City of S. Hous.*, 922 F.2d 1183, 1187 (5th Cir. 1991). Any "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment," *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003), and neither will "only a scintilla of evidence" meet the nonmovant's burden. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). Rather, the nonmovant must "set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). The Court will not assume "in the absence of any proof . . . that the nonmoving party could or would prove the necessary facts" and will grant summary judgment "in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Little*, 37 F.3d at 1075.

For a court to conclude that there are no genuine issues of material fact, the court must be satisfied that no reasonable trier of fact could have found for the nonmovant, or, in other words, that the evidence favoring the nonmovant is insufficient to enable a reasonable jury to return a verdict for the nonmovant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In making this determination, the court should review all the evidence in the record, giving credence to the evidence favoring the nonmovant as well as the "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that evidence comes from disinterested witnesses." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000). The Court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment, *id.* at 150, and must review all facts in the light most favorable to the nonmoving party. *First Colony Life Ins. Co. v. Sanford*, 555 F.3d 177, 181 (5th Cir. 2009).

**DISCUSSION**

Plaintiff asserts that Defendant "has not set out a 'legitimate non-discriminatory reason for termination.'" ECF No. 28 at 1. The Court concludes there are genuine issues of material fact such that summary judgment is not proper.

## I. Discrimination Claims

Plaintiff asserts disability discrimination under the ADA, Rehabilitation Act, and Texas Labor Code.

### A. Discrimination Under the Americans With Disabilities Act

Plaintiff alleges disability discrimination under the ADA based on two theories: discrimination against Plaintiff directly and discrimination against Plaintiff due to her association with her disabled son.

#### 1. Direct Disability Discrimination

The ADA prohibits discrimination based on disability. 42 U.S.C. § 12112(a). A successful plaintiff must either present direct evidence of discrimination or proceed under the *McDonnell Douglas* burden-shifting framework. *Rodriguez v. Eli Lilly & Co.*, 820 F.3d 759, 764 (5th Cir. 2016); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Here, Plaintiff does not have direct evidence. ECF No. 28 at 14. So *McDonnell Douglas* applies.

Under the *McDonnell Douglas* framework, there are three steps to a successful claim. *See Caldwell v. KHOU-TV*, 850 F.3d 237, 241–42 (5th Cir. 2017) (describing the analysis). Initially, the plaintiff must establish a *prima facie* case of discrimination. *Id*. A *prima facie* case creates a presumption of discrimination and shifts the burden to the employer to "articulate a legitimate non-discriminatory reason for the adverse employment action." *Cannon v. Jacobs Field Servs. N. Am., Inc.*, 813 F.3d 586, 590 (5th Cir. 2016). If the employer does so, the burden shifts back to the

plaintiff to "to produce evidence from which a jury could conclude that the employer's articulated reason is pretextual." *Id.*

Under the ADA, a *prima facie* case requires showing that: "(1) [the plaintiff] has a disability . . . or was regarded as disabled; (2) he was qualified for the job; and (3) he was subject to an adverse employment decision on account of his disability." *Id*.

### i) Plaintiff Makes a *Prima Facie* Showing

Here, there is sufficient evidence to establish a *prima facie* case of direct disability discrimination. First, Plaintiff claims to suffer from several medical conditions, including fibromyalgia. These conditions "interfered with major life activities," impeded Plaintiff's ability to work, and forced her to take FMLA leave. ECF No. 28 at 4. They could have reasonably constituted a disability. *Id*.

Second, Defendant does not dispute that Plaintiff was qualified for her role; she had been employed in it for nineteen years. ECF No. 28 at 19.

Third and finally, Defendant terminated Plaintiff's employment. Plaintiff claims that Defendant did so because her disability required her to attend frequent doctor's appointments. ECF No. 28 at 19. Among other evidence, she points to her supervisor's statement that "it's too much" when discussing Plaintiff's appointments. ECF No. 28 at 9. She also argues that she did not violate Defendant's attendance policy as Defendant alleges. *See Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1090 (5th Cir. 1995) ("[A] prima facie case may be established by showing that the plaintiff did not violate the work-rule for which he was disciplined."). Taken together and viewed in a light favorable to Plaintiff, she established a *prima facie* case.

### ii) A Fact Issue Exists on the Legitimacy of Defendant's Termination Rationale

This *prima facie* showing shifts the burden to Defendant to rebut with a legitimate, non-discriminatory reason for termination. *See Caldwell*, 850 F.3d 241–42 (describing *McDonnell Douglas* burden shifting). A fact issue exists.

Defendant stated in the termination letter that it was terminating Plaintiff because of her "failure to follow calling-in instructions and no call, no show on May 17, 2025."[1] But the parties dispute whether Plaintiff was indeed a "no-call, no-show" on May 17. Defendant argues that its policy required Plaintiff to call her supervisors and she failed to do so. ECF No. 24 at 6. But Plaintiff claims that she *did* call and they did not answer. ECF No. 28 at 10. She also claims to have texted her supervisors. *Id*. Defendant's human resources manager testified that if Plaintiff had texted, her absence would not have been a "no call, no show." *Id*. at 2.

Perhaps recognizing this issue with the rationale in the termination letter, Defendant now broadly asserts that it terminated Plaintiff for "repeated violations of the time and attendance policy." ECF No. 24 at 16. But that policy states that disciplinary action "up to and including termination" is only warranted given "[a]ny week with more than (1) late arrival." ECF No. 24 at 3. Defendant does not allege that Plaintiff was late or absent more than once during the week of May 17. *See* ECF No. 24 at 5–6 (listing alleged absences). And again, the termination letter only refers to the May 17th absence. So it is not clear that Plaintiff actually violated the time and attendance policy.

In sum, there is sufficient evidence to conclude that Defendant did not terminate Plaintiff for violating the attendance policy and the reason in the termination letter. Accordingly, there is a

---

[1] ECF No. 28-1 at 4. Defendant's response to Plaintiff's motion states that it terminated her for "repeated violations of the time and attendance policy." ECF No. 24 at 16. But the termination letter only states that it was terminating her for her "failure to follow calling-in instructions and no call, no show on May 17, 2022." ECF No. 24-8 at 2. Given the contradictory evidence, a reasonable juror could credit the latter justification over the former.

genuine factual dispute whether Defendant had a legitimate, non-discriminatory, non-pretextual reason to terminate Plaintiff. Considering this alongside the Plaintiff's *prima facie* evidence, a reasonable juror could conclude that Defendant unlawfully discriminated against Plaintiff in terminating her. Summary judgment is denied.

### 2. Associational Disability Discrimination

Plaintiff's claim of associational discrimination similarly poses a fact issue. The ADA provides standing for parties based on their relationship with a disabled person. 42 U.S.C. § 12112(b)(4) (prohibiting covered employers from "denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association"). The *McDonnell Douglas* framework again applies to this ADA claim. *See Caldwell*, 850 F.3d 237, 241–42 (describing framework).

Plaintiff can establish a *prima facie* case of associational discrimination by showing that:

    (1) she is qualified for the job,

    (2) she received an adverse employment action,

    (3) the employer knew of her relative's disability, and

    (4) "the adverse employment action occurred under circumstances raising a reasonable inference that the relative's disability was a determining factor in the employer's adverse action."

*See Grimes v. Wal-Mart Stores Texas, L.L.C.*, 505 F. App'x 376, 380 (5th Cir. 2013).[2]

---

[2] Despite § 12112(b)(4)'s clear language, it is unclear whether the Fifth Circuit recognizes a cause of action for associational disability discrimination. *Compare Grimes*, 505 F. App'x at 380 ("The Fifth Circuit has not explicitly recognized a cause of action for discrimination based on association with a handicapped individual, nor have we described what such a claim requires."), *with E.E.O.C. v. DynMcdermott Petroleum Operations Co.*, 537 F. App'x 437, 443 (5th Cir. 2013) ("The ADA makes it unlawful for a covered employer to discriminate against an individual . . . because of his relationship or association with an individual with a disability."); *id*. at 448 (holding that the defendant may have discriminated in refusing to hire the plaintiff because the plaintiff's wife was disabled).

Viewing the evidence favorably to Plaintiff, she again established a *prima facie* case. Again, her long-term employment with Defendant evidences her qualifications. ECF Nos. 24 at 2, 28 at 3 (noting that Plaintiff was employed for 17 years). Plaintiff notified Defendant that her son was disabled and needed full-time care. ECF No. 28 at 5. And Defendant terminated Plaintiff after she missed work to provide that care. *Id*. at 3. The temporal proximity between Plaintiff's care-related absence and Defendant's action supports an inference of causation.

Under *McDonnell Douglas*, this *prima facie* showing shifts the burden to Defendant to rebut with a non-discriminatory rationale for the termination. As discussed, there is genuine dispute whether Defendant had such a rationale and, if so, whether it was pretextual. Summary judgment on Plaintiff's associational disability claim is denied.

**B. Discrimination Under the Rehabilitation Act**

Plaintiff also alleges disability discrimination under the Rehabilitation Act. This statute and the ADA "are generally interpreted interchangeably." *Miraglia v. Bd. of Supervisors of Louisiana State Museum*, 901 F. 3d 565, 574 (5th Cir. 2011); *accord Soledad v. U.S. Dep't of Treasury*, 304 F.3d 500, 503 (5th Cir. 2002) (explaining that the Rehabilitation Act includes "a provision that explicitly incorporates the ADA's standards governing complaints alleging employment discrimination"). There is one exception: The Rehabilitation Act requires a heightened showing of causation. *Soledad*, 304 F.3d at 505. While the ADA only requires that discrimination "have a determinative influence on" the adverse action, the Rehabilitation Act requires that the adverse action is "solely because of" the discrimination. *Id*. at 503–05.

Putting this together, a *prima facie* showing under the Rehabilitation Act requires Plaintiff (1) had a disability, (2) was qualified for the job, and (3) was subject to an adverse employment action "solely because of" her disability. *See Caldwell*, 850 F.3d at 241–42 (stating the ADA

10

standard); *Soledad*, 304 F.3d at 505 (recognizing the Rehabilitation Act's heightened causation requirement).

Plaintiff has made the requisite showing here. As discussed, there is evidence of both a disability and Defendant's qualifications. And there is a fact issue whether her termination was solely on account of her disability: testimony from Defendant's human resource manager contradicts Defendant's stated reason for terminating Plaintiff. *See* ECF No. 28 at 1–2 (explaining contradiction). This shifts the burden to Defendant under *McDonnell Douglas*. For the reasons stated, a reasonable juror could conclude that Defendant failed to meet it or—alternatively—that Defendant's stated reason is pretextual. So summary judgment is again inappropriate.

### C. Discrimination Under the Texas Labor Code

Disability discrimination under the Texas Labor Code uses the same standards as the ADA. *Clark v. Champion Nat'l Sec., Inc.*, 952 F.3d 570, 578 n.16 (5th Cir. 2020). As stated, summary judgment on Plaintiff's ADA discrimination claim is denied. Summary judgment on her state law discrimination claim is denied for the same reasons.

## II. Retaliation Claims

Plaintiff alleges retaliation under the ADA, Texas Labor Code, and FMLA.

### A. Retaliation Under the ADA

A claim of retaliation under the ADA, like a claim of discrimination, is assessed according to a burden-shifting framework. *See Nall v. BNSF Ry. Co.*, 917 F.3d 335, 348–49 (5th Cir. 2019). "To show an unlawful retaliation, a plaintiff must establish a *prima facie* case of (1) engagement in an activity protected by the ADA, (2) an adverse employment action, and (3) a causal connection between the protected act and the adverse action." *Id.* A *prima facie* case shifts the burden to the defendant, who must then present a "legitimate, non-discriminatory reason" for the adverse action. *Id.* at 349. Such a reason shifts the burden back to the plaintiff to prove the reason is pretextual.

*Id*. This final step requires that the plaintiff show that the adverse action would not have occurred "but for" her protected activity. *See Pineda v. United Parcel Serv., Inc.*, 360 F.3d 483, 487 (5th Cir. 2004) ("We have consistently held that in retaliation cases where the defendant has proffered a nondiscriminatory purpose for the adverse employment action the plaintiff has the burden of proving that "but for" the discriminatory purpose he would not have been terminated.").

Plaintiff met the elements required of a *prima facie* case. First, she allegedly complained about how she was treated and disciplined for her medical absences. ECF No. 28 at 28. In doing so, Plaintiff opposed unlawful action under the ADA. This would constitute a protected activity. *See* 42 U.S.C. § 12203 ("No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter"). Alternatively, she requested time-off the morning of May 17, 2022, to care for her disabled son. Defendant does not dispute that this was an accommodation request and also constituted protected activity. *See* ECF No. 24 at 15 (contending only that Plaintiff cannot establish "but for" causation); ECF No. 29 at 6 (same).

Second, the parties do not dispute that Plaintiff's termination satisfies the adverse-action element of the *prima facie* case.

Finally, there is sufficient evidence to support the third element. For the purposes of a *prima facie* case, the question is "whether there is any evidence of the third element, a causal connection between the activity and the adverse action." *Feist v. Louisiana, Dep't of Just., Off. of the Atty. Gen.*, 730 F.3d 450, 454 (5th Cir. 2013); *see also Gee v. Principi*, 289 F.3d 342, 345 (5th Cir. 2002) ("The causal link required by the third prong of the prima facie case does not rise to the level of a 'but for' standard.").

There plainly is. Plaintiff requested time off the morning of May 17 to care for her disabled son. She was terminated three days later. The temporal proximity here supports an inference of causation. *See Feist*, 730 F.3d at 454 ("A plaintiff alleging retaliation may satisfy the causal connection element by showing close timing between an employee's protected activity and an adverse action against him." (cleaned up)). A reasonable juror could find a *prima facie* case here.

This *prima facie* case again shifts the burden to the Defendant to state a non-discriminatory reason for termination. As discussed, there is a fact question whether this legitimate, non-pretextual purpose existed. Summary judgment must be denied.

## B. Retaliation Under the Texas Labor Code

Plaintiff also asserts retaliation in violation of the Texas Labor Code. *See* TEX. LAB. CODE § 21.055. This cause of action employs the same burden-shifting scheme and *prima facie* elements as an ADA retaliation claim. *See Pineda*, 360 F.3d at 487 (analyzing a retaliation claim under the Texas Commission on Human Rights Act). For the reasons stated in assessing Plaintiff's ADA retaliation claim, the Court finds summary judgment on Plaintiff's state-law retaliation claim similarly inappropriate.

## C. Retaliation Under the Family and Medical Leave Act

The story with Plaintiff's FMLA retaliation claim is largely the same. This claim is "evaluated under a version of the *McDonnell Douglas* burden-shifting framework." *Cerda v. Blue Cube Operations, L.L.C.*, 95 F.4th 996, 1002 (5th Cir. 2024). The *prima facie* case requires Plaintiff show:

(1) she was protected under the FMLA;

(2) she suffered an adverse employment action; and

(3) she was treated less favorably than an employee who had not requested leave under the FMLA or the adverse decision was made because he sought protection under the FMLA.

*Mauder v. Metro. Transit Auth. of Harris Cnty., Tex.*, 446 F.3d 574, 583 (5th Cir. 2006).

### 1. Plaintiff Established a *Prima Facie* Case

Plaintiff had not received FMLA leave for at least seven months prior to her May 17th absence. ECF No. 28 at 5 (claiming that Plaintiff received FMLA leave on October 15, 2021). Defendant claims to have terminated her because she was a "no call, no show" on May 17; Plaintiff was not on FMLA leave at that time.

But Plaintiff may have been eligible for FMLA leave on May 17 and, in seeking an absence, invoking her FMLA rights. Plaintiff was responding at the last minute to the cancellation of her son's nurse. One ground for FMLA leave is "to care for . . . a son . . . if such . . . son . . . has a serious health condition." 29 U.S.C. § 2612. "[T]o care for" a family member "includes situations where the employee may be needed to substitute for others who normally care for the family member." 29 C.F.R. § 825.124.

Defendant does not dispute this. Rather, Defendant argues that the Plaintiff did not *actually* apply for FMLA leave on May 17 through Defendant's internal process. Defendant argues that "Plaintiff's prior FMLA leave expired on September 6, 2021" and "[b]ecause her FMLA was no longer in effect, she was not engaged in a protected activity" under the FMLA. ECF No 24 at 29 at 6.  But leave to care for a son with cerebral palsy is exactly what the FMLA seeks to provide. *See* 29 U.S.C. § 2612 (enumerating grounds for FMLA leave). Given that these were unforeseen circumstances, the FMLA does not require that Plaintiff file an application through Defendant's internal process to avail herself of FMLA benefits. Instead, "[w]hen the approximate timing of the need for leave is not foreseeable, an employee must provide notice to the employer as soon as

14

practicable." 29 C.F.R. § 825.303. Viewing the evidence in a light favorable to Plaintiff, she did so here.

Defendant may retort that Plaintiff failed to put her supervisors on notice that her absence was an invocation of her FMLA rights. But "when giving notice, an employee need not expressly invoke the FMLA." *Cerda*, 95 F.4th at 1002 (cleaned up). "The critical question is whether the information imparted to the employer is sufficient to reasonably apprise it of the employee's request to take time off for a serious health condition." *Manuel v. Westlake Polymers Corp.*, 66 F.3d 758, 764 (5th Cir. 1995). Here, Defendant was aware not only that Plaintiff's son had a serious health condition but also that this condition had previously entitled Plaintiff to FMLA leave. *See* ECF Nos. 24 at 4, 28 at 5 (noting that Defendant granted Plaintiff FMLA leave ten times to care for her son). As such, there is sufficient evidence to find the *prima facie* element of protection under the FMLA.

There is also sufficient evidence to find that Plaintiff satisfied the last two elements. Her termination plainly constitutes an adverse employment action. And the temporal proximity between her request for leave to care for her son and her termination three days later supports a causal link. The *prima facie* burden is met.

### 2. Defendant Does Not Foreclose a Fact Issue

This shifts the burden to the Defendant to respond with a legitimate reason for termination. *See Goff v. Singing River Health Sys.*, 6 F. Supp. 3d 704, 708 (S.D. Miss. 2014) ("[R]etaliation claims under the FMLA are subject to the same burden-shifting framework applicable to Title VII discrimination claims."). For the reasons discussed, there is fact question whether Defendant has done so. Even if it has, a reasonable juror could find it pretextual. Summary judgment is again denied.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment (ECF No. 24) is

**DENIED.**

It is so **ORDERED**.

**SIGNED** this 16th day of January, 2026.

_____

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE